In the Middle District of Pennsylvania, Civil Action Court

Plaintiff                                              )
1. Saad Adda                                           )
3400 Concord Rd.                                       )
York, P.A 17402                                        )
v.                                                     )          4:16cv530
Defendant                                              )
A. Mary Sabol                                          )          Case Number:_____
York County Prison Warden.                             )          Judge:_____
47 Baltimore St                                        )
Glen Rock, P.A. 17327.                                 )
717-235-1931                                           )
&                                                      )
Defendant                                              )
B. Clair Doll                                          )          **FILED**
York County Prison Deputy Warden                       )          **SCRANTON**
3400 Concord Rd.                                       )
York, P.A. 17402                                       )          MAR 2 9 2016
&                                                      )
Defendant                                              )
C. Scott Koons                                         )          Per_____
York County Prison Treatment Supervisor.               )          DEPUTY CLERK
3400 Concord Rd.                                       )
York, P.A. 17402                                       )
                                                       )
&                                                      )
Defendant                                              )
D. Donald L.Reihart.                                   )
Solicitor For The York County Board.                   )
3400 Concord Rd.                                       )
York, P.A. 17402                                       )
&                                                      )
Defendant                                              )
E. York County Prison                                  )
3400 Concord Rd.                                       )
York, P.A. 17402.                                      )
&                                                      )
F. Defendant                                           )
Prime care                                             )
3400 Concord Rd                                        )
York,P.A:17402                                         )
&                                                      )
G. Sandra M.Ulerick                                    )
M.B.A,C.C.H.P for Prime Care                           )
3400 Concord Rd                                        )
York Pa 17402.                                         )
&

H. Patricia Bennett
Health Service Administrator
3400 Concord Rd
York Pa 17402

&
   I-   Sandra Sackett
PA For Prime Care
3400 Concord Rd
York Pa 17402

&
Victoria Sheet
Nurse For Prime Care
3400 Concord Rd
York Pa 17402.

To Be Filed under; 42 U.S.C. § 1983, pursuant to 28 U.S.C. § 1331, § 1343(a)(3), 28 U.S.C. § 2201 and § 2202, and 28 U.S.C. § 2283&2284 and Rule 65 the Federal Rules of Civil Procedure.

## Notice to Defendant.

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

_____
(Name of office)

_____
(Address)

_____
(Telephone Number)

This is a civil action authorized by 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. § 1331 and § 1343(a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2201 and § 2202. Plaintiff's

claims for injunctive relief are authorized by 28 U.S.C. § 2283 & § 2284 and Rule 65 the Federal Rules of Civil Procedure.

In the Middle District Of Pennsylvania is an appropriate venue under 28 U.S.C .Section 1391(b)(2) because it is where the events giving rise to this claim occurred.

The Plaintiff, Defendant(s), and cause of action and relief are as follows;

## I. PLAINTIFFS

A) Plaintiff, Saad Adda, is and was at all times mentioned herein a prisoner of the State of Pennsylvania in the custody of the Pennsylvania Department of Corrections. He is currently confined in York County Prison, in York Pennsylvania.

i.) Plaintiff, Saad Adda  is an adult individual residing at 3400 Concord Rd, York P.A. 17402 while incarcerated in lieu of five pending cases before the Court of Common Pleas of York County which remain unresolved.

ii.) At all times mentioned herein, the Plaintiff was an inmate incarcerated at York County Prison, under the supervision, custody, and care of the York County Prison System, by order of the York County Judicial System.

## II) DEFENDANTS

A) Defendant Mary Sable is the Superintendent / Warden of York County Prison .She is legally responsible for the operation of York County Prison and for the welfare of all the inmates in that prison.

B) Defendant Clair Doll is the Deputy Warden of York County Prison .He is legally responsible for the operation of York County Prison and for the welfare of all the inmates in that prison.

C) Defendant Scott Koon's is the Treatment Superintendant of York County Prison .He is responsible for the operation of York County Prison and for the welfare of all the inmates in that prison.

D) Defendant Donald L Reihart  is the Solicitor Of The York County Prison Board . He is legally responsible for the operation York County Prison and the welfare of all the inmates in that prison

E) Defendant Sandra M Ulerick is the MBA.CCHP for Prime Care at the York County Prison .She is legally responsible for the welfare of all the inmates in that prison.

F) Defendant Patricia Bennett is the Health Service Administrative (HSA) for Prime Care at the York County Prison. She is legally responsible for the operation of the medical department at the York County Prison and the welfare of all the inmates in that prison.

G) Defendant Sandra Sackett  is the PA for prime Care at the  York County Prison. She is legally responsible for the operation of the medical department in York County Prison and for the welfare of all the inmates in that prison.

I) Defendant Victoria Sheet is a Nurse in the medical department at the York County Prison. She is legally responsible as a Nurse for the welfare of all inmates in that prison.

J) For the remainder of this complaint, and for each defendant itinerated below under section # 2; the Plaintiff is Saad Adda of York County, Pennsylvania.

## III. FACTS.

1.) Under 42 U.S.C.1983 to maintain an Eighth Amendment claim based on Prison medical treatment, an inmate must show deliberate indifference to serious medical needs .In the United States Court Of Appeals for the Ninth Circuit, the deliberate indifference test result consist of two parts.

First the plaintiff must show a serious medical need by demonstrating that failure to treat a condition could or did result in further significant injury or the necessary and wanton inflection of pain.

Second the plaintiff must show that the defendant's response to the needs was deliberately indifferent.

The second prong is satisfied by showing (a) purposeful act or failure to respond to an inmate's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison physicians provide medical care, yet, an inadvertent or negligent failure to provide adequate need not show his harm was substantial, however such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. If the harm is an isolated exception to the defendant's overall treatment of the inmate, it ordinarily militates against a finding of deliberate indifference.

2.) The quality of basic healthcare in the United States can best be described as uneven. And one would not anticipated that the best care would be found in jails and prisons. Nonetheless, it is reasonable to expect that certain fundamental practices would be followed ,such as doctors actually examining patients prescribing medication, and when a new physician comes on the scene, that doctor would look at a patient's medical records or talk to treating doctor before changing medication prescribed by someone else. The medical practitioners in this case did not meet those expectations.

3.) Cruel And Unusual Punishment Clause.
The cruel and unusual punishment clause of the Eighth Amendment is made applicable to the State's by the Fourteenth Amendment. The cruel and unusual punishment clause of the Eighth Amendment proscribed more than physically barbarous punishment, the Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency against which penal measures must be evaluated.

4.) Criminal Law 78-Cruel and Unusual Punishment- what Constitutes
Punishment which are incompatible with the evolving standards of decency that mark the progress of a maturing society, or involve the unnecessary and wanton infliction of  pain are repugnant to the cruel and unusual punishment clause of the Eighth Amendment.
A 2b .The cruel and unusual punishment clause of the Eighth Amendment proscribes punishment grossly disproportionate to the severity of the crime, and it imposes substantive limits on what can be criminal and punished.

5 _Constitution Law –Cruel & Unusual Punishment.
Healthcare law> Action against facilities> Facility liability >Prison.
Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by U.S. Const .Amend VIII. Neither inadvertent failure to provide adequate a medical care nor or a physician's negligence in diagnosing or treating a medical condition states a valid claim of medical mistreatment under U.S. Const amend .VIII. A prisoner must allege acts or omission sufficiently harmful to evidence deliberate indifference to serious medical needs.

A finding of deliberate indifference necessary precludes a finding of qualified immunity. Prison officials who deliberately ignore the serious medical needs of inmates can not claim that it was not apparent to a reasonable person that a such actions violated the law.

6 _Healthcare law.>Actions Against Healthcare Workers >Prison Officials &Physicians.
The deliberate indifference to serious medical needs standard applicable to prisoners has an objective and a subjective component .The objective component of U.S.Const .amend VIII claim contextual and responsive to contemporary standards of decency. Regarding the subjective component, knowledge of the needs for medical care and intentional refusal to provide that care constitutes deliberate indifference.

7 _Healthcare law>Treatment >Failure and Refusals to treat.
Delay in access to medical attention can violate U.S.Const amend VIII when it is tantamount to unnecessary and wanton infliction of pain. Cases stating a constitutional claim for immediate or emergency medical attention concern medical needs that are obvious even to layperson because they involve life- and threatening condition or situation where it is apparent that delay would detrimentally exacerbate the medical problem. In contrast delay or even denial of medical treatment for superficial non serious physical conditions does not constitute a violation of U.S.Const. amend VIII..

Failure or refusal to provide treatment, when indicating a deliberate indifference to serious medical needs of prisoners, results in the unnecessary and wanton infliction of pain prescribed by U.S.Const.amend.VIII. Such conduct also violates the due process clause of U.S.Const.amend.VII. because the failure or refusal to treat could well result in the deprivation of life it self.
The United States Court held that a prison inmate is entitled to psychological or psychiatric treatment if a physician or other health care provider, exercising ordinary skills and care at the time of observation, concludes with reasonable medical certainly to what (1) prisoner's symptoms evidence a serious disease or injury (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial.
A prison official cannot be found liable under U.S.Const amend VIII for denying an inmate humane conditions of confinement unless the officials knows of and disregards an excessive risk to inmate health or safety, the officials must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also drawn the inference (D.W, H.S.A Patricia Bennett and PA Sandra Sackett).
A prisoner's medical staff that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or a minor fatigue, the sorts of aliments for which many people who are not in prison do not seek attention does not by it's refusal violate the Constitution, what violate the Constitution is deliberately ignoring a requests for medical assistance that has long been held to be a form of cruel and unusual punishment but this is provided that illness or injury for which assistance is sought is sufficiently serious or painful to make the refusal of assistance uncivilized.
A medical condition is serious where the failure to treat it's condition could result in further significant injury or the unnecessary and wanton infliction of pain. The following are indication that I had a serious medical needs. The existence of my injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affected me from daily activities or the existence of chronic and substantial pain.

The record clearly justified that between the following date of 03/22/2015 to 08/03/2015 my chief complaint was about how this PA and H.S.A Bennett plays this cut and mouse.
There is no medical personnel assigned to follow up with unless that you have to wait from the time putting a sick call and the waiting period is 02 to 03 weeks but if you follow the hand book medical inmate is to be seen by a provider in period of 07 days.


In Whether a different medication would have better controlled Shehee's diabetes is not the sort of debate that rises to the level of deliberate indifference. The court may infer deliberate indifference "only when the decision by the professional is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Youngberg v.Romeo,457U.S.307,323(1982). If Shehee had fallen shortly after intake, that conclusion might be warranted. After all Dr Lloyd changed Shehee's medication before he evaluated Shehee and with limited, if any, meaningful information about his diabetes, medical history, and medication. But the fall happened in September 2010, four months after the plaintiff's incarceration and after four months of monitoring Shehee's diabetes. At the time of the fall, Dr.Loyd had sufficient information to conclude that 70/30 insulin would adequately manage the plaintiff's diabetes.
Dr Lloyd's practice of phoning in medical care raise significant concerns. But the facts of this case boil down to a disagreement about which medication which medication Shehee should have been prescribed. There is no evidence in the record that Dr Llyod's choice was grossly incompetent, inadequate, or conscience –shocking.
Finally, Shehee argue that a jury reasonably could conclude that the delay in sending him to the emergency room exhibited deliberate indifference. However, he has presented no evidence that PHS has a policy of delaying the decision of delaying the decision to send inmates to hospitals. Both Dr. Lloyd and Nurse Btyson testified that nurses have the authority to send inmates to hospital in emergency situation. Even if such a policy existed, Shehee has not establish that the defendants were subjectively aware of the plaintiff's serious medical needs. Nurse Bryson testified that she did not recognize the plaintiff as having any symptoms of hypoglycemia or any trauma to his spinal cord. She thought the plaintiff may have only pulled a muscle. Upon receiving the X ray results, Dr Lloyd immediately ordered the plaintiff transferred to a hospital emergency room. The delay in transferring the plaintiff did not evidence a wanton desire to inflict pain, or otherwise display deliberate indifference to an obvious medical need.


Prisoners do not lose constitutional rights. Among other safeguards, the Eighth Amendment's prohibition against cruel and unusual punishment, in corporate into the due process clause of the Fourteenth Amendment, protects prisoners from unconstitutional conditions of treatment imposed by prison authorities under color of state law. The adequacy of medical treatment provider prison inmates is a condition subject to Eighth Amendment.
There is almost 2500 prisoners in York County Prison from 3/22/2015 to 08/03/2015 and in so many occasions either through a sick call or a 801 my chief complain is about how my medication was dispensed and my dilanten level.
York County Prison under it's contractor Prime Care had shown by substantial evidence clearly abused their discretion in providing medical treatment to inmate, furthermore this medical facility had fallen performing the duty of providing the medical needs to the plaintiff and is far short of supplying the constitutionally required level of adequate medical treatment. The medical facility in York County Prison under Prime Care

are grossly understaffed. In addition, with the exception of the well equipped ,the physical plant equipment provided for the care of prisoner's are totally inadequate. Compounding the lack of stuff and facility ,and resulting in part there form, is the poor administration of the medical treatment program, including the procurement and distribution of drugs and other medical supplies. Further, the record is filled with examples of correctional staff members intentionally denying me the right to be examined by trained medical personnel, and further refusing to provide my medicine and other treatment. The result is a degree of neglect of basic medical of prisoners that could justly be called "Barbarous" and "Shocking to the conscience" see,Novakv Beto453F.2d661 671(5thcir,1971).

The record clearly justified that between the following there is no medical personnel assigned to follow up with unless that you have to wait from the time I put a sick call the waiting time is 02to03 weeks. The warden  the Deputy Warden and H.S.A Bennett many times of the inconvenience and because they are not trained it is frequently impossible to see a doctor and even with the 801 against PA Sandy on 04/03/2015 that she refused to provide me with medical attention See(Exhibit A).
The effect of inadequate facilities and an overworked staff appear throughout medical organization is informal and ineffective. The duties and responsibilities of medical personnel are not set out in writing. Consequently, lines of supervision are vague, untrained inmates provide of the support services as janitors ,ward attendants clerks , X.ray ,laboratory and dental technicians, yet few checks are made to see that they properly complete their tasks. As a result I was neglected ,moreover no one ,inside or outside the Prison system conducts periodic Health Inspections, or audits to check the quality of care being provided. Because the medical facility are understaffed, medical personnel are continually upon to perform services for which they have not been trained and for which they are not qualified. The worst abused is found among unsupervised Nurses, without formal training, screen Sick Call patients and dispense medication. The comulative effect of the above described deficiencies on the quality of care provided is profound. In my condition, while not an emergency is serious enough to warrant care by a Doctor and my be diagnosed and treated entirely by the PA  whom training is limited, because of under staff I have to wait weeks to see a Doctor.

For purposes of an Eighth Amendment claim of cruel and unusual punishment to establish deliberate indifference to medical needs, a prisoner must prove he had objective serious medical needs and the official actually knew of but deliberately disregard those needs. Deliberate indifference may be manifested by prison doctors in responding to the prisoner's needs or by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment.
When the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberates indifference toward the violation. "Boyol v.Knox,47.3d.966,968(8thCir.1995)." the supervisor must know about the conduct and facilitate it, approve it condone it ,or turn a blind eye[to it] like wise this officials are liable and fail promptly to provide me with needed medical care ,they deliberately interfere with the prison doctor performance. A prison medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions Camberos .v Branstand ,73F.3d174,176(8thCir.1995).
Prime Care employees, H.S.A Bennett, PA Sandra Sackett are all involved in this conduct. Furthermore Deputy Warden Clair Doll and H.S.A. Bennett participate to cover up and approve the wrong doing by PA and turn a blind eye[to it].

On 04/07/2015 blood work was taken, the result that level medication was too high {Blood Count is(30)} Normal is {Blood Count should be between(10-20)}
On 04/22/2015 I file and responded to the supervisor H.S.A Bennett through a 804 an appeal to the Deputy Warden Mr Clairr Doll see (Exhibit A).
ON 04/13/2015 PA Maggie responded to my sick call finally my medication was reduced from 600mg/day to 300mg/day.
Another blood work was taken this time the level was low {Blood Count is(7)} below normal I put in a sick call my chief complain that I am having a seizure attacks and trimmers but Prime Care Health workers ignored my request I even had a seizure on June 08th I was told that I will be seen by the provider importunately that was not the case. But when finally. Dr Cattell get involve he adjusted my medication. When he (Dr Cattell) did see me on August he did learn through another blood work that my level was too low this time {Blood Count is(5)} Dr Cattell level my medication did adjusted and through another blood work on September 25/2015 when I was seen by the Provider my seizure medication was well controlled that is thanks to a Dr who is knowledge and is adequate in his work and who does care about his patient. After more then five months Deputy Warden answered my 804. This time Mr Clair Doll (Deputy Warden) blame me for my Dilantin level been low because my hanger strike that did affected my medicine. In a ten(10) days hunger strike I did take my medication as was prescribed to me unless was deliberately was not given by the .nurses The only time there is interference with medication if I was diabetic. On September 30th 2015 I file a appeal requesting the solicitor office to review and investigate my complaint(ExhibitA806).


UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT.
Norwood White ,and on Behalf of others Appellant v John J Napoleon.
        Docket No 89.5523.
Plaintiff prisoner's challenged the summary judgment in favor of prison physician after they filed a complaint and amended complaint alleging U.S.Const.Amend.VIII right violation retaliation for exercising their substantive due process rights to refuse treatment, informed consent claims, deliberate indifference to serious medical needs, and pendent state claims. The court reversed plaintiffs U.S.Const.amend.VIII claims as they alleged more than ordinary allegation of medical malpractice because defendant intended to inflict pain on plaintiffs without any medical justification and defendant insisted on continuing courses of treatment that he knew were painful, ineffective or entailed substantial risk of serious harm. The retaliation claim for exercising substantive due process rights to refuse treatment of a plaintiff was reversed as he had a U.S.Const.amend.XIV right to refuse treatment which may have contained a harmful drug and disciplinary proceedings were instituted against him. The informed consent claims of two plaintiffs were reversed as they alleged defendant deliberately withheld information.
The due process clause of the U.S.Const.amend.XIV substantively protects certain fundamental rights. Among these right to be free from unjustified intrusions into the body, the related right to refuse unwanted medical treatment, and the right to sufficient information to intelligently exercise those rights. Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the constitution actionable under 42U.S.S.S.1983.
A prisoner's right to refuse treatment is useless without knowledge of the proposed treatment. Prisoners have a right to such information as is reasonably necessary to make an informed decision to accept or reject proposed treatment, as well as a reasonable explanation of the viable alternative treatments that can be made available in a prison setting. Prisoners may not bring treatment to a halt, insisting on answers to questions

that are unreasonable, time wasting or intended to turn the doctor -patient relationship into a battle control over treatment.

The amended complaint alleges many instances of medical misconduct. Although "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain 'or 'to be repugnant to the mankind, '"Estelle ,429U.S at105-06, the amended complaint does not allege a mere isolated episode of inadvertence, but persistent conduct in the face of resultant pain and risk of permanent injury. From this one reasonably may infer that the doctor is either is either intentionally inflicting pain on the prisoners or is deliberately indifferent to their medical needs. See Bishop v Stoneman,508F2d1224, (2Cir.1974). We find this sufficient to state a violation of the Eighth Amendment and a concomitant right to relief under 42U.S.C.1983.

Of course, the prisoners may have insufficient evidence to show the doctor intended to inflict pain or was deliberately indifferent to their needs. The doctor may come forward with evidence to the contrary. All we hold at this juncture is that the plaintiffs have made the bare showing in the allegations of the amended complaint required to survive a motion to dismiss under Fed .R.Civ.P.12(b)(6).

United States Court Of Appeals For The Fifth Circuit
No .72.1737.
April 18,1972.
COY RAY CAMPBELL, Petitioner Appellant v Dr George J.BETTO Director of the Texas Department of Correction ,Respondent Appellee.

The prisoner filed a suit, pursuant to 42 U.SC.S.1983 alleging that he was made to do heavy manual labor in violation of a medical restriction of which the department's prison officials were aware, that the prison officials threatened him with reprisal for continuing his action, and that he was deprived of medical treatment when prison officials knew of his heart condition. The court vacated the order that refused to docket the prisoner's action, that dismissed it to failure to state a claim, and denied an in forma paupers appeal. The court vacated the order that refused to docket the prisoner's action ,that dismissed it for failure to state a claim, and denied an in forma pauper is appeal. The court observed that although prison officials had wide latitude in the administration of prisons, constitutional duties mandated that courts assured that the conditions of incarceration did no overstep the bounds of constitutional limitations. The prisoner's claims to deprivation of basic elements of adequate medical treatment fell within constitutional guarantees. The court also noted that on remand, the prisoner's suit required docketing, and then, if proper, it could be dismissed for failure state a claim upon which relief could be granted.

Although the federal courts are very properly loathe to interfere in the internal administration of the prisons, and wide discretion is allowed prison officials in maintaining order and discipline, our constitutional duties require that the court's be ever vigilant to assure that the conditions of incarceration do not overstep the bounds of federal constitutional limitations.

Whatever may be the outer contours of the "prison discipline rule,  it is apparent that the courts cannot close their judicial eyes to prison conditions which present a grave and immediate threat to health or physical well being. If the deprivation of basic elements of hygiene has consistently been held violate of constitutional guarantees, then certainly practices which result in the deprivation of basic element of adequate medical treatment, particularly such deprivation as immediately threatens life and limb, would be equally vulnerable.

Whatever may be the outer contours of the "prison discipline rule" it apparent that the courts cannot close their judicial eyes to prison conditions which present to a grave and immediate threat to health or physical

well being. Haines v Kerner, supra; Woolsly v Beto,5cir..,1971,450F.2d321 Rocha v
Sowers,5cir..,,1972,454F.2d1155 Jackson v Bishop.

Ronald D. Weaver ,Appellant v Franklin County
COMMONWEALTH COURT OF PENNSYLVANIA.
918 A.2d194;2007Pa.commw.LEXIS104.
No.1463C.D.2006.
An appellate court's review of an order sustaining preliminary objections is whether the law states with
certainty no recovery is possible under the facts alleged. The appellate court accepts as true all well-pled
allegation and material facts averred in the complaint, as well as inferences reasonably deduced there from.
any doubts should be resolved in favor of overruling the demurrer.
Where the general assembly specifically waives immunity, liability may attach .42Pa.C.S.8541. Liability
may be imposed where damages are recoverable at common law or under a statute creating a cause of action
if the injury was caused by a person not protected by immunity ;the injury was caused by negligent acts of
the local agency, or its employees acting within the scope of their duties ;and ,the claim falls within one of
eight enumerated exceptions in 42Pa.C.S.8542(b). These exceptions are strictly construed and narrowly
interpreted. In summary, the governmental immunity exceptions set forth in 8542(b) covers: operation of
motor vehicles ;care ,custody of control of personal property; care, custody or control of real property, a
dangerous condition of trees, traffic controls and street lighting, a dangerous condition of steam, sewer, gas
or electric systems, a dangerous condition of street, a dangerous condition of sidewalks, and the care,
custody or control of animals.
Civil conspiracy occurs when two or more persons combine or agree intending to commit an unlawful act or
do an otherwise lawful act by unlawful means. A party asserting such a claim is required to aver material
facts which will either directly or inferentially elements of conspiracy. In addition alleging the above, a
plaintiff must facts supporting a claim for conspiracy, namely (1) the persons combined with a common
purpose to do unlawful act or to do a lawful act by unlawful means or unlawful purpose, (2) an overt act in
furtherance of the common purpose has occurred, and (3) the plaintiff has incurred actual legal damage.
Additionally, absent a civil cause of action for  a particular act there can be no cause of action for civil
conspiracy to commit that act.

LUMP:

Fed R.Civ.P.8(a)(2) requires a short and plain statement of the claim against that the plaintiff (Saad Adda) is
entitled to relief. A complaint need set down in detail all the particularities of a plaintiff's claim against the
defendant. Dismissals of complaints under civil rights statutes are scrutinized with special care. All
complaint need do is afford the defendant fair notice of what the plaintiff's claim is and the grounds upon
which it rests.
Under some circumstances the denial of medical care may give and rise to a violation of
U.S.Const.amend.XIV due process. That does not mean that every claim involving or automatically
transformed into a cause of action under civil rights, but it does mean that prison authorities Deputy
Warden, H.S.A Bennett and both PA's deliberately indifferent to the suffering (Adda Saad) under their care.
I did state a proper cause of action when I alleges that prison authorities Deputy Warden, H.S.A Bennett and
both PA's denied me reasonable requests for medical treatment in the face of an obvious need for such
attention where I was there by exposed to undue suffering or the threat of tangible residual injury.

It is that fundamental fairness and our most basic conception of due process mandate that medical care be provided to one who is incarcerated and may be suffering from serious illness or injury. This is not to say that every request for medical attention must be needed nor that courts are to engage in the process of second- guessing in every case the adequacy of medical care that the state provides. But where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process.

When prisoners states a proper cause of action when he alleges that prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention when I was exposed to undue suffering or the threat of tangible residual injury. See Ingran v Montgomery County Board,369F.Supp.873,874(W.D.Pa.1974).

The court held that inmates allegation that he was left in severe pain over extended period of time without the administration of necessary and available analgesic relief. The Ninth Circuit agreed that a prisoner who is needlessly allowed to suffer pain when relief is readily available does have a cause of action against those whose deliberately indifference is the cause of his suffering.

On the Eighth Amendment medical treatment prohibit against cruel and unusual punishment .See.e.g Newman vAlabama,503F.2d1320, when prison officials Deputy Warden, H.S.A Bennett and PAconsciously sought to inflict pain on a prisoner by withholding treatment .See.e.g.,Runnels v Rosendale,499F.2d733 ,736(9th Cir,1974).

I suffered unduly by the failure to be provided medical treatment and be determined in view of the totality of the circumstances. In making this determination the trier of fact should consider the practicalities of the situation including the extent of the injury, the realistic possibilities of treatment, and possible consequences for failing to provide immediate medical attention. Shmidt v Wingo,499F.2d70,75(6th Cir.1974).

My complaint alleges a complete denial of medical care and is that I received inadequate medical treatment .SeeFitzke v Shappell.

Prison officials violate the proscription against cruel and unusual punishment under U.S.Const.amend.VIII. When their conduct demonstrates deliberate indifference to serious medical needs of prisoners. The standard of deliberate indifference to serious medical needs of prisoners. The standard of deliberate indifference to serious medical needs contains both an objective element and a subjective element.

The former requires that the deprivation suffered by the prisoner be objectively sufficiently  serious to be sufficiently serious a prison officials or Prime Care acted or omission must result in the denied of the minimal civilized measure of life's necessities. In the medical care context, the objective element requires that the medical needs be sufficiently for liability to exist the medical need must be objectively serious.

Ignoring a request for medical treatment is a form of cruel and unusual punishment provided that the illness or injury for which assistance is sought is sufficiently serious or painful to make the refusal of assistance uncivilized. PA Sandra Sackett acted with "Sufficiently Culpable mind state of mind". The appropriate inquiry did alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited "deliberate indifference".

A prison officials cannot be found liable under U.S.Const.Amend. VIII ,for denying human conditions of confinement unless the officials knows of and disregards an excessive risk to inmate health or safety ,the officials must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists ,and must also drawn the inference [Deputy Warden Clair Doll ,H.S.A Bennett and both PA Sandra Sackett].

A prison medical staff's that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue, the sort of aliments for which may people who are not in prison

do not seek medical attention does not by its refusal violate the constitution. What violate the constitution is Deliberate to ignoring a request for medical assistance that has long to a form of cruel and unusual punishment but this is provided that the illness or injury for which assistance is sought is sufficiently serious or painful to make the refusal of assistance uncivilized.

A medical condition is serious where the failure to treat it's condition could result in further significant injury or the unnecessary and wanton infliction of pain. The following are indication that I had serious medical need. The existence of my injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affected me from daily activities; or the existence of chronic and substantial pain.

Saad Adda plaintiff is currently incarcerated at the York County Prison. In March 2015, the defendant were deliberately indifferent to my medical needs and subject me "Adda Saad "to unnecessary painful medical treatment. Defendants in my complaint are Deputy Warden Clair Doll H.S.S Patricia Bennett and both PA Sandra Sackett.

Just after the assault and after I reported that to a 3rd shift captain I was evaluated by medical staff about severe pain I was experienced in my left arm, shoulder and the chest area, I was interviewed by nurse "Nicole". After describing the pain and stated that I "suffer from a chronic and debilitating lower back disorder with recurrent compression of c6 and c7 and/or l3,l5 and l4 nerve root on right "the nurse said. There is nothing I can do, I will have to put to see the PA or Doctor.

In the mean time I signed up for a sick call from Feb 26 to March 03 2015 I was seen by the PA who did ordered a X.RAY.

April 05 2015 and before that I informed nurses in several time the continuous of pain in my left arm and shoulder ,the response was "Short of staff' and what you went me to do".

On April 22 2015 I filed an official inmate Grievance complaining about the injury and the refusal of treatment from PA Sandy .(Exhibit A).

I filed a 804 appeal to Deputy Warden Clair Doll ,his response in 805 (Exhibit.A) and after almost Five months he stated that he found an error in filing and responding to my appeal.

On May 13th I was seen again by PA Maggie that because York County Board Of Commissioner answered my 806 returning the matter to the Deputy Warden. See (Exhibit C). At this point PA Maggie responded to the Board Of Commissioner stated that at this point she believe that I need more test.

On June 3rd I received a determination from the Board Of Commissioner stated that the lump in the chest is a benign tissue mass appeared not to be a threat to my health In addition the Dilantin level had been appropriately monitored. See (Exhibit D).

How can you say appropriately monitored when my level was low below the normal range which is between 10 and 20 from May to August my level was 07 and 05 that's below the range. So what is appropriately monitored.?

Most of my grievances were considaled and denied upon initial review furthermore most of my grievances get twisted conspiracy to commit denial stated reasons of that denial based on he/she said.

On June 3rd I was seen by Dr Cattell after thorough exam and looking up the records, Dr Cattell refer me to a outside Dr and in the mean time he advised me that the only thing to cure this lump is with a surgery.

On March 20 2015 I filed a sick call for the lump I sustained in my left shoulder even with the help if a 3rd shift asking a nurse why? I haven't been called in regard about my sick call. A 801 response from H.S.A Bennett responded to my 801 and her response that if symptoms not improved further testing may be needed. I did appealed the H.S.A decision filing a 804 but unfortunately the Deputy Warden took him

five(05) months to respond my 805 furthermore he blames everything on inmate was in hunger strike see attached (Exhibit E).

Deliberate indifference is the "equivalent of recklessly disregarding [a substantial risk of serious harm to a prisoner]". Dominguez v Corr .Med.Servs.,555F.3d543, 550(6thCir.2009)(quoting Philipsv.RoaneCnty,534F.3d531, 540(6thCir.2008). it is true that the Sixth Circuit has held that "less flagrant conduct may also constitute deliberate indifference in medical mistreatment cases." Terrance v.Northvi Reg'l Psychiatric Hosp.288F.3d834, 843(6th Cir.2006). that court has endorsed the idea that even when medical treatment is furnished, the Eighth Amendment is violated if the care is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'''Id.at844(quoting Waldrop v.Evans,871F2d1030, 1035(11thCir.1989)). However difference in judgment between an inmate prison medical personnel regarding appropriate medical diagnoses or treatment are in sufficient to state a deliberate indifference claim .Sanderferv.Nichols,62F.3d151,154-155(6thCir.1995). deliberate indifference is not mere negligence ,"Watkins ,273F.3dat585 and as noted earlier mere allegations of malpractice are insufficient to state a claim Estelle,429U.S.at106. "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment. Federal courts are generally reluctant to a second guess medical judgments and to constitutionalism claims which sound in tort law. "Westlake v Lucas,537F2d857,860n.5(6thCir.1976SS) it is only "[w]hen prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non- medical reasons, their conduct in causing the delay "violate the Eighth Amendment. Blackmorev.KalamazooCity,390F.3d890,899(6thCir2004).

S 97 ESTELLE v GAMBLE
429US97,50Led2d251,97SCt285,REHDEN429us1066,50Led2d785,97Ct798.
No.798.
A prisoner in Texas state prison instituted a civil right action under 42USCS 1983 against certain prison officials ,including the chief medical officer of the prison hospital ,in the United States District Court for the Southern District of Texas ,alleging that the defendant had violated the cruel and unusual punishment clause of the Eighth Amendment by failing to provide adequate medical treatment after the prisoner had sustained a back injury while performing prison work. The District Court dismissed the complaint for failure to state a claim upon which relief could be granted but the United States Court of Appeals for the Fifth Circuit reversed and remanded with instructions to reinstate the complaint (516F.2d937).
In the medical context ,an inadvertent failure by prison personnel to provide adequate medical care for a prisoner cannot be said to constitute a wanton infliction of unnecessary pain or to be repugnant to the conscience of mankind of mankind in violation of the cruel and unusual punishment clause of the Eighth Amendment ,and thus a complaint thus a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim or medical mistreatment under the Eighth Amendment, since medical malpractice does not become a constitutional violation merely because the victim is a prisoner, in order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs, it being only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment. (steven ,J ,dissented in part from this holding).

Upon concluding that a Federal Court of Appeals had erred holding that a state prisoner's civil rights complaint under 42USCS1983 against certain prison  officials including the prison's chief medical officer, stated a cause of action against the medical officer for alleged violation of the cruel and unusual punishment clause of the Eighth Amendment by failing to provide adequate medical treatment after the prisoner had sustained an injury while performing prison work ,and upon reversing the Court of Appeals' judgment as to the medical officer, the United States Supreme Court will remand the case to allow the Court of Appeals had focused primarily on the alleged actions of prison medical personnel and had not separately considered whether the allegations against the other prison officials stated a cause of action.

Deliberate indifference by personnel to a prisoner's serious illness or injury constitutes cruel and unusual punishment contravening the Eighth Amendment. Here, however, respondent's claims against Gray do not suggest such indifference, the allegations revealing that Gray other medical personnel saw respondent on 17 occasions during a 3 month span and treated his injury and other problems. The failure to perform an X-ray or to use additional diagnostic techniques does not constitute cruel and unusual punishment but is at most medical malpractice cognizable in the sate courts. The question whether respondent has stated a constitutional claim against the other petitioners, the Director of the Department of Corrections and the warden of the prison ,was not separately evaluated by the Court of Appeals and should be considered on remand.

The history of the constitutional prohibition of "cruel and unusual punishments" has been recounted at length in prior of the Court and need not be repeated here. See,e.g.,Greggvgeorgia,428US153,169-173,49Led2d859,96Ct2909(1976) (joint opinion of Stewart ,Powell ,and Stevens ,j j j.(hereinafter joint opinion));see also Granucci, Nor Cruel and Unusual Punishment Inflicted. The original Meaning ,57Calif lRev 839(1969). It suffices to note the primary concern of the drafters was to proscribe "torture[s]' and other "barber[ou]" methods of punishment . id.,at842. Accordingly ,this Court first applied the Eighth Amendment by comparing challenged methods of execution to concededly inhuman techniques of punishment see Wilkerson v Utah,99us130,136,25Led345(1879)("[i] it is safe to affirm that punishment of torture...and all others in the same line of unnecessary cruelty, are forbidden by that amendment ...");In re Kemmeler, 136US436,447,34Led519,10SCt930(1890)("punishments are cruel when they involve torture or a lingering death...").

Our more recent cases, however, have held that the Amendment proscribes more than physically barbarous. See ,e.g.,Gregg v Georgia ,supra,at171,49Led2d859,96SCt2909(joint opinion);TropvDulles,356US86,100-101,2leD630,78SCt590(1958);WeemsvUnitedStates,217US349,373,54Led793,30SCt544(1910). The Amendment embodies "broad and idealistic concepts of dignity ,civilized standards ,humanity ,and decency...,"Jackson v Bishop,404F.2d571,579(CA81968),against which we must evaluate penal measures. Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with "the evolving standards of decency that mark the progress. "TropvDulles,supra,at101,2Led2d630,78SCt590;see also Gregg v Georgia,supra,at172-173,49Led2d859,96SCt2909(joint opinion);Weems v United States ,supra ,at378,54L Ed793,30SCt544.

Mr Justice Stevens, dissenting.

Most of what is said in the Court's opinion is entirely consistent with the way the lower federal courts have been processing claims that the medical treatment of prison inmates is so inadequate as to constitute the cruel and unusual punishment prohibited by the Eighth Amendment. I have no serious disagreement with the way this area of the law has developed thus far, or with the probable impact of this opinion. Nevertheless, there are three reasons why I am unable to join it. First ,insofar as the opinion orders the dismissal of the complaint against the chief medical.

Officer of the prison, it is not faithful to the rule normally applied in construing the allegations in a pleading prepared by an unconcealed inmate. Second ,it does not adequately explain why the court granted certiorari in this case. Third ,it describes the State's duty to provide adequate medical care to prisoner's in ambiguous terms which incorrectly relate to the subjective motivation of persons accused of violating the Eighth Amendment rather than to the standard of care required by the Constitution.

The complaint represent a crude attempt to challenge the system of administering medical care in the prison where Gamble is confined. Fairly construed, the complaint alleges that he received a serious disabling back injury in November 1973, that the responsible prison authorities were indifferent to his medical needs ,and that as a result of that indifference ha has been mistreated and his condition has worsened.

The indifference is allegedly manifested, not merely by the failure or refusal to diagnose and treat his injury properly ,but also by the conduct of the prison staff. Gamble was placed in solitary confinement for prolonged periods as punishment for refusing to perform assigned work which he was physically unable to perform. The only medical evidence presented to the disciplinary committee was the statement of a medical assistant that he was in first class condition when in fact he was suffering not only from the back injury sprain but from high blood pressure. Prison guards refused.

TJYMAS BLACKMORE ,Plaintiff –Appellant ,v .KALAMAZOO COUNTY ,et al Defendants –Appellees. 390F.3d8990;2004U.S.App.LEXIS25057;2004FEDApp.0421P(6thCir.) O4a0421p.062No.03-2222.

The detainee alleged defendants failed to provide prompt medical treatment for appendicitis ,for over two days while he was detained at the county jail. The instant court agreed with the district court that there was an issue of fact as to when the individual defendants knew the nature and duration of the detainee's abdominal pain, when they had reason to believe that he required medical attention, and the length of delay between such knowledge and the detainee's evaluation by a nurse. The instant court the detainee also presented sufficient evidence from which a jury could infer that his obvious need for medical care was sufficiently serious and that the officers had a sufficiently culpable state of mind. After the detainee suffered for two days, making unrelenting complaint and vomiting, a nurse identified classic signs of appendicitis and doctors performed an appendectomy. The court also found that summary judgment in favor of the county was not proper, as the record presented an issue of fact regarding the total lack of county policies, and adequate training for this type of constitutional claim, and whether the harm resulted from county. Whether a convicted prisoner or a pretrial detainee, deliberate indifference to one's need for medical suffices for a claim under 42U.S.C.S.1983. Prison official's deliberate indifference violates these rights when the indifference is manifested by prison guards in intentionally denying or delaying access to medical care for a serious medical need.

A constitutional claim for denial of medical care has objective and subjective component. The objective component requires the existence of a sufficiently serious medical needs. The inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. This subjective component should be determined in light of the prison authorities' current attitudes and conduct. Deliberate indifference entails something more than mere negligence ,but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs is essential to a finding of deliberate indifference.

As to the objective component of a constitutional claim for denial of medical care, a serious need for medical care, the inmate is required only to show that he is incarcerated under conditions posing a substantial risk of serious harm, so as to avoid unnecessary and wanton infliction of pain. The United States Court of Appeals for the Sixth Circuit has defined this objective factor as evidence of serious medical needs, and has noted the evidence need only show that the medical need at issue is sufficiently serious.

The "obviousness" standard for determining a serious medical need from a separate branch of Eighth Amendment decisions where the seriousness of a prisoner's medical needs may also be decided by the effect of delay in treatment.

Where a plaintiff's denial of medical care claims arise from an injury or illness so obvious that even a layperson would easily recognize the necessity for a doctor's, the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame.

The Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on inmate by acting with "deliberate indifference "toward the inmate's serious medical needs. Prison official's deliberate indifference violates these rights "when the indifference violates these rights "when the indifference is manifested by ...prison guards in intentionally denying or delaying access to medical care...."for a serious medical needs Estelle,429U.S.at104.

The subjective component requires an inmate to show that the prison officials have "a sufficiently culpable state of mind in denying medical care. This subjective component "should be determined in light of the prison authorities 'current attitudes and conduct. Deliberate indifference "entails something more than mere negligence, "{390F.3d896} Farmer,511U.S.at835,but can be" satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."Id. under Farmer for the very purpose of causing harm or with knowledge that harm will result.

As to the objective component ,a serious need for medical care, Farmer requires only that "the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm. "Id. Under Farmer ,"the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm, and he must also draw the inference in LeMarbe v Wisneski(6thCir.2001).

As to the objective component, a serious need for medical care, Farmer requires only that "the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm;"511U.S.at834 ,so as to avoid "the unnecessary and wanton infliction of pain." Id. This Court defined this objective factor as evidence need only show that " the medical need at issue is sufficiently serious .

In unpublished opinions, this court has evaluated the seriousness of prisoner's medical needs by this "approach. See Franklin county v Taylor(6thCir.2004)(such obvious signs of recurring incontinence and debilitating immobility were clear symptoms of a serious problem, even if Defendant did not [choose]to believe plaintiff.').

This "obviousness for determining a serious medical need is distinct from a separate branch of the Eighth Amendment decisions where the seriousness on a prisoner's medical needs "may also be decided by the effect of delay in treatment."

As reflected by its facts, Napier involved a claim about the effect of the delay in receiving medical treatment. In Napier, an arrestee suffering from kidney failure was kept from his scheduled dialysis while incarcerated for twenty –nine hours.238F.3dat741. the evidence showed that the missed forty one of his thrice –weekly dialysis in 1997, including a treatment session scheduled three days prior to his incarceration and the session following his release, and that he even told a prison guard that he had an appointment that

day missing it is was not "no big deal" because he had missed "them before". We held that "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.

A -CARLOS M .GUTIERREZ ,Plaintiff –Appellant ,v HOWARD A. PETERS ,III,Director ,Illinios. UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT.
No 93-2366.
Appellant inmate brought an action under 42U.S.C.S1983 ,complaining that the inadequate medical care he received for an infected cyst while imprisoned at a correctional center rose to the level cruel and unusual punishment .under U.S.Const .amend VIII. The district court granted the motion of appellee department of correction et al. for judgment on the pleading and denied a like motion submitted by appellant. Appellant challenged the district court's orders denying him leave to amend and finding for appellees on the pleadings. The court concluded that appellant had sufficiently alleged a serious medical condition. However, the court held that it was on the deliberate indifference prong of cruel and unusual punishment ,that appellant's Eighth Amendment claim was fatally undermined by his own allegations. The court noted that appellant's detailed account of the treatment he received of his cyst revealed that he could not satisfy the deliberate indifference prong. The court found no need to address the other issues by appellant because it was clear that this Eighth Amendment claim was meritless. The court affirmed the judgment of the district court.
In reviewing the plaintiff's complaint, all well pleaded facts are assumed to be true, ad all such facts ,as well as the reasonable inferences there from ,are viewed in the light most favorable to the plaintiff. Because a plaintiff proceeds pro se in the district court, his complaint must be liberally construed and is entitled to less stringent scrutiny than those prepared by counsel. It is by now, axiomatic that district courts have a special responsibility to construe pro se complaint liberally. Allegations of the pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. A complaint drafted by a pro se litigant 'however inatfully pleaded ,is held to less standards than formal pleadings drafted by lawyers.
Prison officials violate the proscription against cruel and unusual punishment under U.SConst .amend VIII when the conduct demonstrates deliberate indifference to serious medical needs of prisoners. The standard of deliberate indifference to serious medical needs contains both an objective element and a subjective element. The former requires that the deprivation suffered by the prisoner be objectively, sufficiently serious. To be sufficiently serious, a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. Ignoring a request for medical treatment is a form of cruel punishment.
A prison official cannot be found liable under U.S.Const.Amend.VIII for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.
Deliberately to ignore a request for medical assistance has long held to be a form of cruel and unusual punishment but this is provided that the illness or injury for which assistance is sought is sufficiently serious or painful to make the refusal of assistance uncivilized. A prisoner's medical staff that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue, the sorts of ailments for which many people who are not in prison do not seek medical attention does not by its refusal violate the constitution.

B –VINCENT A. BROCK ,Plaintiff –Appellant ,v LESTER WRIGHT,T.G.EAGEN and JAMES G.

UNITED STATES COURT OF APPEALLS FOR THE SECOND CIRCUIT.
Docket No.02-0042.
Plaintiff inmate filed a 42U.S.C.1983 action ,alleging defendants violated his Eighth Amendment rights by their participation in the refusal to treat his Keloid. The United States District Court for the southern District of New York granted defendant's motion for summary judgment ,finding that defendants were not deliberately indifferent and that the Colloids was not a serious medical condition. The inmate appealed. Summary judgment for a prison's chief medical officer on an inmate 's Eighth Amendment claim was vacated and remanded because the constitutionality of the policy on treating Colloids ,a policy promulgated by that officer ,was an issue in dispute.
The district court either erred in not treating the inmate's affidavit as true, or believed that only "extreme pain" or a degenerative condition would suffice to meet the legal standard. The inmate's allegation of pain and inability to use his mouth established the seriousness of his condition, should a jury fully credit the evidence. However, the court agreed with the district court that two of the defendants did not show deliberate indifference to the inmate's medical condition. Thus summary judgment as to those defendants was affirmed. As to the third defendant, the chief medical officer of the prison, the court found the constitutionality of the policy on the treatment of Colloids, a policy promulgated by the chief medical officer, was an issue in dispute. A jury could conclude that the policy represented a conscious choice by the prison to prescribe easier and less efficacious treatment plans for prisoners who were either at risk for or who had begun to develop Colloids in areas where the Colloids would likely cause pain and other medical problems.
On an inadequate medical care Eighth Amendment claim, an inmate must meet two conditions in order to be successful against any one of the defendants. He must first show that his medical condition is objectively a serious one. Then, the inmate must show, for each defendant, that the defendant acted with deliberate indifference to the inmate's medical needs.
There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition. In many cases, however, the United States Court of Appeals for the Ninth Circuit has set forth factors that should guide the analysis. A non –exhaustive list of such factors includes :1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, 2)whether the medical condition significantly affects daily activities, and3)the existence of chronic and substantial pain.
In the Eighth Amendment context, tooth cavity is a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so. the Eighth Amendment forbids not only deprivation of medical care that produce physical torture and lingering death, but also less serious denial which cause or perpetuate pain.
In the Eight Amendment context, merely because a condition might be characterized as "cosmetic" does not mean that its seriousness should not be analyzed using the kind of factors enumerated in the jurisprudence.
In order to prove deliberate indifference in a challenge to an prison inmate's conditions of confinement, a prisoner must show that a particular defendant knows of and disregards an excessive risk to inmate health or safety. Although a plaintiff must prove actual knowledge of a risk, evidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it.
In the context of the Eighth Amendment, a defendant may be held liable if a jury could reasonably find that he created a policy or custom under which unconstitutional practices occurred or that he allowed the continuance of such a policy or custom. While liability **may** not be established against a defendant simply

because that the defendant was a "policymaker" at the time unconstitutional acts were committed ,where unconstitutional acts are the result of a policy promulgated by the defendant ,a valid 42 U.S.C1983 action may lie.


United States District Court for the North Dakota .Meloy v Bachmeier,2001 U.S DIST .LEXIS14254. (D.N.D.Sept 7 2001).


The purposes of an Eighth Amendment claim of cruel and unusual punishment ,to establish deliberate indifference to medical needs, a prisoner must prove he had objectively serious medical needs and the official actually knew of but deliberately disregarded those needs. Deliberate indifference may be manifested by prison doctors in responding to the prisoner's needs or by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with treatment.

The purpose of an Eighth Amendment claim of cruel and unusual punishment involving a claim of deliberate indifference to medical needs, a supervisor is only liable for an Eighth Amendment violation when the supervisor is personally involved in the violation or when the supervisor corrective inaction constitutes deliberate indifference toward the violation .The supervisor must know about the conduct and facilitate it, approve it, condone it or turn a blind eye to it .Likewise, supervisory officials are liable under 42 U.S.C.S.1983 only if they fail promptly to provide an inmate with needed with needed medical care, they deliberately interfere with the prison doctor's performance, or they tacitly authorize or are indifferent to the prison doctor's constitutional violation.

When the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation "Boyd v Knox,47F.3d966,968 (8th Cir.1995)(footnote omitted) .The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye[to it]" .Id.(internal quotation marks omitted) .Likewise, other courts have stated supervisory officials are under 1983 only if they fail promptly to provide inmate with needed medical care, they deliberately interfere with the prison doctor's performance, or they tacitly authorize or are indifferent to the prison doctor's constitutional violation .E.g.,Miltie v Beorn,896F.2d848,854(4th Cir.1990) .A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions .Camberos v Branstad , 73F.3d174 176 (8th Cir.1995) .Prison officials cannot substitute their judgment for a medical professional's prescription .Zentmyer v Kendall County ,220F3d805, 812(7th Cir.2000) .

Ronald D .Weaver ,Appellant v Franklin County.

COMMONWEALTH COURT OF PENNSYLVANIA.

918 A.2d194,2007 Pa .Commw.LEXIS 104.

Civil conspiracy occurs when two or more persons or agree intending to commit an unlawful act or do an otherwise lawful means .A party asserting such a claim is required to aver material facts which will either directly or inferentially establish elements of conspiracy .In addition to alleging the above, a plaintiff must allege facts supporting a claim for conspiracy, namely (1) the persons combined with a common purpose to do an unlawful act or to do a lawful act by unlawful means or unlawful purpose, (2) an overt act in furtherance of the common purpose has occurred, and (3) the plaintiff has incurred actual legal damage .Additionally, absent a civil cause of action for a particular act ,there can be no cause of action for civil conspiracy to commit that act.

A )Intentional Infliction of Distress, Libel ,and Negligence

We first address Plaintiff's intentional tort and negligence claim .At the outset, Section 8541 of the Code, 42 Pa C.S.8541.

Except as otherwise provided in this subchapter, no local agency should be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof of any other person .

WILLIE SMITH. Plaintiff –Appellant v NURSE CARPENTER .SUPERINTENDANT WILKINSON SUPERINTENDANT at Pharsalia Corr .Facility ,Defendants –Appellees
UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
316 F.3d178,2003U.S.APP.LEXIS503
Docket No01-0294.

When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment ,it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is an "objective terms, sufficiently serious "to support an Eighth Amendment claim .There is n need to distinguish between a prisoner's underlying "serious medical condition" and the circumstances of his "serious medical needs" when the prisoner alleges that prisoner alleges that prison official have failed to provide general treatment for his medical condition, but In case when the prisoner is receiving appropriate on going treatment for his condition, instead brings a narrower denial of medical care claim based on a temporary delay or interruption in treatment the serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner.

It is the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract in the abstract ,that is relevant for Eighth Amendment purposes. For example ,the failure to provide treatment for an otherwise insignificant would may violate the Eighth Amendment if the wound develop signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment.

Such risks may be absent however although an inmate suffers from an admittedly serious medical condition such as H.N where the alleged in treatment are minor and inconsequential. A serious medical needs exists where the failure to treat a prisoner's condition could in further significant injury or the unnecessary and wanton infliction of pain. Given the fact –specific nature of Eighth Amendment denial of medical care claim it is difficult to formulate a precise standard of "seriousness" that is adequately sensitive (in the sense of capturing those medical conditions properly within the realm of the Eighth Amendment concern) yet appropriately) pecific Li.e.,excluding those conditions that are not). There is no settled ,precise metric to guide a court in its estimation of the seriousness of a prisoner's medication condition.

Just as the relevant "medical need "of a prisoner care only be identified in relation to the specific factual context of each case ,the severity of the alleged denial of medical care should be analyzed with regard to all relevant facts and circumstances. The absence of adverse medical effects or demonstrable physical injury is one such a factor that may be used to gauge the severity of the medical need at issue. Indeed ,in most cases ,the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm.

WILLIAM HATHAWAY ,Plaintiff –Appellant v THOMAS CPUGHLIN
UNITED STATES COURT OF APPEALLS FOR THE SECOND CIRCUIT
99F.3d550,1996 U.S.App.LEXIS29158;Fed.R.Evid. serv (CALLAGHAN)1327.

A complaint that a physician is negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under U.S.Const.amend.VIII. Medical malpractice does not become violation merely because the victim is a prisoner.

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs while mere medical malpractice is not tantamount to deliberate indifference, certain instances of medical malpractice involves culpable recklessness ,such as an act or a failure to act by the prison doctor that a conscious disregard of a substantial risk of serious harm. Accordingly not every instance of medical malpractice is a prior preclude from constituting deliberate indifference. As this court explained in Hathaway ,the deliberate indifference standard embodies both objective and subjective prong. Objective, the alleged deprivation must be "sufficiently serious" in the sense that a "condition of urgency, one that may produce death ,degeneration, or extreme pain " exists .See id.,37F.3d.at66(citing Nance v Kelly,912F.2605,607(2d.Cir.1990).

(Pratt,j.dissenting) .Subjectively, the charged official must act with a sufficiently culpable state of mind I.d. According to the United States Supreme Court ,the subjective element of deliberate indifference "entails something more than mere negligence....[but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result "Farmer v Brennan.511U.S825,1145.Ct.1970,1978,128L.E.d.2d811(1994). The subjective element require a state of mind that is the equivalent of criminal recklessness namely when the prison official knows of and disregards an excessive risk to inmate health or safety, the official must both be aware of facts from witch the inference could be drawn that a substantial of serious harm exists, and he must also drawn the inference"1145.Ctat1979;see also Hathaway11, 37F.3dat66.

A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment violation merely because the victim is a prisoner. In order to state a cognizable claim a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Estelle v Gamble,429U.S.97,106&n.14,50L.Ed251,97.Ct.285(1976);see also HathawayII,37F.3dat60 ("mere medical malpractice does not constitute an Eighth Amendment violation.

Robert SPRUIL ,Appellant v. FRANK GILLIS ;GOOLIER ,C.O ;MC GLAUGHLIN ,MD;BROWN PA. UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT.
372F.3D218;2004 U.S.App.LEXIS12027.
No.o2-2659.
January 13 ,2004.

The inmate's suit alleged that, as a result of defendant 's deliberate indifference, his serious back condition was untreated, resulting in excruciating pain and susceptibility to other injuries. On appeal after dismissal, the court held that 1997e(a) included a procedural default component and that a determination of proper exhaustion of remedies was made by evaluation the inmate's compliance with the prison administrative regulations governing inmate grievances and any possible waiver of regulations by prison officials. There was no exhaustion or procedural default bar to the inmate's suit, witch included a monetary damage claim ,because he was not required to seek money damages in his grievance ,and prison officials waived his default of failing to name the physician's assistant. The inmate did not state a claim for deliberate indifference against the non –medical prison official, and absent a reason to believe (or actual knowledge)

that prison doctor's or assistants were mistreating or not treating a prisoner, a non medical prison official could not be charged with deliberate indifference under the Eighth Amendment.

The United States Court of Appeals for the Third Circuit holds that 42U.S.C.S.1997e(a) includes a procedural default component. The court further holds that the determination whether a prisoner has "property" exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative inmate grievances, and the waiver ,if any, of such regulations by prison officials.

The United States Supreme Court has observed in the federal habeas corpus context that an exhaustion requirement without a procedural default component is quite toothless. To protect the integrity of the federal exhaustion rule ,federal habeas courts ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies .i.e., whether he has fairly presented his claims to the state courts.

Only unnecessary and wanton infliction of pain or deliberate indifference to the serious medical needs of prisoners are sufficiently egregious to rise to the level of a constitutional violation. Allegations of medical malpractice are not sufficient to establish a Constitutional violation. Mere disagreement as to the proper medical treatment is also insufficient.

The Estelle deliberate indifference to serious medical needs standard is clearly met when a doctor is intentionally inflicting pain on a prisoner. The United States Court of Appeals for the Third Circuit has identified several other scenarios that satisfy Estelle ,including ;(1) where prison authorities deny reasonable requests for medical treatment and such denial expose the inmate to undue suffering or the threat of tangible injury ;(2) where knowledge of the need medical care is accompanied by the intentional refusal to provide that care.

If a prisoner is under the care of medical, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Absent a reason to believe(or actual knowledge) that prison doctors or their assistants are mistreating(or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eight Amendment scienter requirement of deliberate indifference.

The judgment of the District Court with respect to Gooler will be affirmed on the ground that Spruill has failed to state a claim upon which relief can be granted for a violation of his Eighth Amendment rights by Gooler. With respect to Dr.McGlaughlin and Brown, we hold that Spruill has met the exhaustion requirement of 1997e(a), and that has stated a claim for violation of his Eighth Amendment rights. We will therefore reverse the judgment of the District Court, and remand for further proceedings.

## V.LEGAL CLAIMS(G).

I) Plaintiff realize and incorporate by reference paragraph:

1) Defendant Donald L Reihart Solicitor for the York County Prison Board ,Mary Sabol Warden for York County Prison Deputy Warden Clair Doll ,Scott koons Treatment Supervisor work for York County Prison, and Sandra Sackett M.Ulerick M.B.A ,C.C.H.P and Patricia Bennett both named

defendant work for Prime Care deliberate indifference to plaintiff's serious medical needs violated plaintiff's rights and Constituted Cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

2) .Defendant PA Sandra Sackett deliberate indifference to plaintiff's serious medical needs violated plaintiff's rights ,and failure or refusal to provide treatment as proscribed by U.S.Const-amend <u>VIV.</u>

II) Generally the due process clause does not impose an affirmative duty upon the State to protect citizen from the acts of private individual. However, the United State Court of Appeals for the Third Circuit has explicitly recognized two exceptions to this general rule. First the state has a duty to protect or care for individuals when a special relationship exists. .Second, the states has a duty a duty when a state-created danger is involved.

III) The United States Court of Appeals for the Third Circuit has adopted the State-created danger theory as a mechanism by witch plaintiff's may establish constitutional violation under <u>42U.S.C.1983.</u>
Liability may attach where a state acts to create or enhance a danger that deprives a plaintiff of his or her Fourteenth Amendment to substantive due process.

VI) To prevail on a state-created danger claim in the Third Circuit, a plaintiff must prove the following four element (1) the harm ultimately caused was foreseeable and fairly direct (2) a state actor with a degree of culpability that shocks the conscience (3) a relationship between the state and plaintiff existed such that the plaintiff was a foreseeable victim of the Defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the State's action opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the State not acted at all

IV) In a state-created danger case when a state actor is not confronted with a hyper pressurized environment but does nonetheless does not have the luxury of proceedings in a deliberate fashion, the relevant question is whether the officer consciously disregarded a great risk of harm. Again it is possible that actual knowledge of the risk may not be necessary where the risk is obvious. In any state-created danger case, the state actor's must always shock the conscience. But what is required to meet the conscience-shocking level will depend upon the circumstances of each case, particularly the extent to which deliberation is possible. In some circumstances, deliberate indifference will be sufficient. In others it will not.

## IV EXHAUSTION OF LEGAL REMEDIES (F).

Plaintiff Saad Adda used prisoner grievance procedure available at York County Prison to try and solve the problem. On the dates that filed grievances plaintiff Saad Adda presented the facts relating to this complaint. Furthermore 0n the date that got response plaintiff Saad Adda was sent a response saying that the grievances had been denied. Plaintiff exhausted all his right importunately appeals was denied.
See attached Exhibits from A through F.

## VI. PRAYER FOR RELEIF(G)

WITERROFOR, plaintiff respectfully prays that this court enter a judgment granting plaintiff:

A) A declaration that the acts and omissions described herein violated plaintiff's rights under the constitution and laws of the United States

B) A preliminary and permanent in junction ordering defendants Mary Sabol (Warden) Clair Doll (Deputy Warden) all the medical grievance process.

C) Compensatory damages in the amount of 1500.000 against each defendant, jointly and severally.

D) Punitive damages in the amount of 1500.000 against each defendant.

E) A Jury trail on all issues trail by jury.

F) Plaintiff's cost in this suit.

G) Any additional relief this court deems just, proper and equitable.


Date: ~~February / 02/2016~~
March 1 - 2016

Respectfully Submitted.


SAAD ADDA


VERIFICATION.


1Off the Pennsylvania Statutes Annotated, and of both the United States Constitutional Amendments, and the Pennsylvania Constitutional Articles; and requests the relief itinerated in each offense above. The Plaintiff additionally seeks Declaratory Judgment ordering York County Prison to alter or otherwise rescind its policy of denying pre-trial detainees in-house jobs because of pending charges. The Plaintiff further cites the violation of Constitutional Law as the basis for the aforementioned relief; choosing to avoid specifically requesting punitive damages, declarative judgment, or other form; but rather requests each specific request for relief notated above. The undersigned understands that the statements herein are mad subject to the penalties of 18 Pa. Cons. Stat. Ann. 4904 relating to unsworn falsification to authorities.


SAAD ADDA

(EXHIBIT B)

802B

**YORK COUNTY PRISON**
**INMATE GRIEVANCE SYSTEM**
**INITIAL REVIEW RESPONSE**

Grievance Number: M 040915 C

Inmate: Saad Adda                 Pouch Number: 89405

Housing Assignment: NNB-2B        Grievance Date: 3/31/15
                                                  Add 3/26/15

The following is a summary of my findings regarding your grievance:

#1 Medications appear to be given at appropriate times. Meds may be given one hour before or one hour after they are prescribed. We do not want you to miss your meds or receive them in an untimely manner. There are extenuating circumstances within the facility that sometimes affect the med passes.

#2 A mattress, based on a medical need, must be approved by a medical provider. Please submit a sick call request to see a medical provider for your mattress request.

_P A Bennett RN_                          4/6/15
Signature of Complaint Supervisor/or designee          Date

___ Inmate received a copy of this response and did not wish to appeal.
_✓_ Inmate given or sent a copy of the 804 appeal form.

3/20
4/5

4.7

(Exhibit B)

805A

**YORK COUNTY PRISON**
**INMATE GRIEVANCE SYSTEM**
**DEPUTY WARDEN RESPONSE**

Grievance Number: _M0409150_

Inmate: _Saad Adda_          Pouch Number: _89405_

Housing Assignment: _NNB-2B_     Grievance Date: _4/9/15_

Date Deputy Warden received grievance: _4/10/15_

The following is a summary of my findings regarding your grievance:

Your grievance was about receiving medications on time and receiving a second mattress. HSA Bennett responded to your concern about medication dispensing times, which you accepted. You not that in your appeal. This issue is resolved. In regards to your second mattress request, it was not approved. You were evaluated by PA Sackett on 4/13/15.

CRDoll

**Signature of Deputy Warden Doll**

Date: _5/4/15_

# YORK COUNTY BOARD OF COMMISSIONERS

**COMMISSIONERS**
STEVE CHRONISTER, PRESIDENT
DOUG HOKE, VICE PRESIDENT
CHRISTOPHER B. REILLY, COMMISSIONER



**SOLICITOR**
MICHAEL W. FLANNELLY

**ASSISTANT SOLICITOR**
DONALD L. REIHART

**CHIEF CLERK/OFFICE MANAGER**
SHERRY BAER

SOLICITOR'S OFFICE
YORK COUNTY ADMINISTRATIVE CENTER
28 East Market Street
York, Pennsylvania 17401-1588
(717) 771-9306 FAX (717) 771-9804
www.yorkcountypa.gov.

May 13, 2015

Inmate Saad Adda
York County Prison
3400 Concord Road
York, PA  17402

> RE:  **Solicitor's Review – Inmate Saad Adda**
> **Complaint Register No. M040915C-15117**
> **Inmate Status – Pretrial Detainee**

Dear Inmate Adda:

The following constitutes a response to the appeal that you filed from the determination made by the Deputy Warden on May 5, 2015.

I.

## PROCEDURAL AND FACTUAL BACKGROUND

An appeal has been filed under the Complaint Review System established at the York County Prison by inmate Saad Adda. The date of the appeal is May 5, 2015.

The inmate has filed two 801s, dated March 22, 2015 and March 26, 2015, which state as follows:

**March 22, 2015:** I am very frustrated with this medical department. Since I was so call hording my medication which is that I do not have any problems of me going and receiving my medication at Cross Hall Medical. The so call proto call they have in place wich changes every other day, one nurse he or she tells one thing the other one goes with the other way. I get call let say today morning at 8:30, afternoon 6 PM, night 7:30 PM. Next day 11:30 AM, aft. 3:30 PM, night 11 PM.  Now if I say something

Inmate Saad Adda
Page 2

about and it happened in so many occasion that I do not get my afternoon med, the answer is it's my fault or he or she the officer's fault. I do know and believe they are short staff, so if I am working the medical department why are they not working with me. Rather they write me up most of the nurses.

**March 26, 2015:** I spoke with Medical about possibly getting a better mattress than the one I have. Last year both PA put an order for this mattress. I asked the medical about what's the hold up, now the answer is the county prison don't want to issue this mattress. I had 2 back surgerys, neck surgery wich i can't get my meds to relief my pain, the mattress that is provided by the county is not helping at all. Is there any possibility of having a medical issue mattress so everybody is happy about this matter. I have a chronic pain and I been patient all this time. Thank you.

The Medical Section of the Prison responded to these complaints, stating:

#1: Medication appears to be given at appropriate times. Meds may be given one hour before or one hour after they are prescribed. We do not want you to miss your meds or receive them in an untimely manner. There are extenuating circumstances within the facility that sometimes affect the med passes.

#2: A mattress based on a medical need, must be approved by a medical provider. Please submit a sick call request to see a medical provider for your mattress request.

Deputy Warden Doll reviewed these complaints and responded as follows:

Your grievance was about receiving medications on time and receiving a second mattress. HSA Bennett responded to your concern about medication dispensing times, which you accepted. You note that in your appeal. This issue is resolved.
In regards to your second mattress request, it was not approved. You were evaluated by PA Sackett on 4/13/15.

In his "806" the inmate states as follows:

Responding to the 805 from the Deputy Warden, my words get twisted. I do not understand what the Deputy Warden is referring to about medication with HSA Bennett this issue is not in my either 801 or 802. Since the Deputy Warden is speaking about medication the only issue I have it was about my seizure meds when I was told by Ms. Laura and she

Inmate Saad Adda
Page 3

was concern the level was high, then when I was seen by PA Sandy she denied my service and even did not want to change my dose. Ms. Laura again was concern, so ordered a blood work come back high, and I was seen by PA to...the dose, but did not want to take any other step to order more/request more test for the lump I have in my left chest close to my heart (push button).   I ask this solicitor to take action and have the provider to require more testing. The burden now is on medical provider.

## II.

### DISCUSSION AND DETERMINATION

This inmate is dissatisfied with the manner in which medication is dispensed to him at the York County Prison. He also has requested a mattress which has been refused by the medical section.

In his 806, the inmate seems to abandon his original complaints and instead focuses on the level of the seizure medication that he is receiving. He claims that a health care provider was concerned that he was receiving too much medication and requested additional testing.   The inmate also complains, in his 806, that he has a "lump" in his chest, near his heart, that should tested.

Normally, complaints that are raised for the first time by the inmate in an 806 appeal are dismissed. However, the seriousness of this inmate's medical complaints require investigation. We will return this matter to the Deputy Warden of Treatment for an appropriate investigation. After we receive a report from the Deputy Warden of Treatment, we will reassess the appeal.

At this time, this is not a matter for reference to the Complaint Review Board.

**Appeal provisionally denied.**

Sincerely,

Donald L. Reihart
Solicitor for the York County Prison Board

DLR/nlb

[ EXHIBIT D ]

# YORK COUNTY BOARD OF COMMISSIONERS

**COMMISSIONERS**
STEVE CHRONISTER, PRESIDENT
DOUG HOKE, VICE PRESIDENT
CHRISTOPHER B. REILLY, COMMISSIONER



**SOLICITOR**
MICHAEL W. FLANNELLY

**ASSISTANT SOLICITOR**
DONALD L. REIHART

**CHIEF CLERK/OFFICE MANAGER**
SHERRY BAER

SOLICITOR'S OFFICE
YORK COUNTY ADMINISTRATIVE CENTER
28 East Market Street
York, Pennsylvania 17401-1588
(717) 771-9306  FAX (717) 771-9804
www.yorkcountypa.gov.

July 15, 2015

Inmate Saad Adda
York County Prison
3400 Concord Road
York, PA  17402

      RE:    **Grievance Appeal – Final Review**
             **Inmate Saad Adda**
             **Grievance No. M040915C-15117**

Dear Inmate Adda:

      Your appeal that was taken regarding the above captioned Complaint Register Number has been reviewed.

      The York County Prison Board voted to deny your appeal.

      You have now exhausted your administrative remedies required by the Federal Prison Litigation Reform Act, 42 U.S.C. §1997(e).

                    Sincerely,

                    Donald L. Reihart
                    Solicitor for the York County Prison Board

DLR/nlb
Cc: Deputy Warden Doll

# YORK COUNTY BOARD OF COMMISSIONERS

**COMMISSIONERS**
**STEVE CHRONISTER, PRESIDENT**
**DOUG HOKE, VICE PRESIDENT**
**CHRISTOPHER B. REILLY, COMMISSIONER**



**SOLICITOR**
**MICHAEL W. FLANNELLY**

**ASSISTANT SOLICITOR**
**DONALD L. REIHART**

**CHIEF CLERK/OFFICE MANAGER**
**SHERRY BAER**

**SOLICITOR'S OFFICE**
**YORK COUNTY ADMINISTRATIVE CENTER**
**28 East Market Street**
**York, Pennsylvania 17401-1588**
**(717) 771-9306 FAX (717) 771-9804**
**www.yorkcountypa.gov.**

May 13, 2015

Inmate Saad Adda
York County Prison
3400 Concord Road
York, PA 17402

RE:    **Solicitor's Review – Inmate Saad Adda**
               **Complaint Register No. M040915C-15117**
               **Inmate Status – Pretrial Detainee**

Dear Inmate Adda:

The following constitutes a response to the appeal that you filed from the determination made by the Deputy Warden on May 5, 2015.

**I.**

## PROCEDURAL AND FACTUAL BACKGROUND

An appeal has been filed under the Complaint Review System established at the York County Prison by inmate Saad Adda. The date of the appeal is May 5, 2015.

The inmate has filed two 801s, dated March 22, 2015 and March 26, 2015, which state as follows:

**March 22, 2015:** I am very frustrated with this medical department. Since I was so call hording my medication which is that I do not have any problems of me going and receiving my medication at Cross Hall Medical. The so call proto call they have in place wich changes every other day, one nurse he or she tells one thing the other one goes with the other way. I get call let say today morning at 8:30, afternoon 6 PM, night 7:30 PM. Next day 11:30 AM, aft. 3:30 PM, night 11 PM. Now if I say something

[Exhibit D]

# YORK COUNTY BOARD OF COMMISSIONERS

**COMMISSIONERS**
STEVE CHRONISTER, PRESIDENT
DOUG HOKE, VICE PRESIDENT
CHRISTOPHER B. REILLY, COMMISSIONER



**SOLICITOR**
MICHAEL W. FLANNELLY

**ASSISTANT SOLICITOR**
DONALD L. REIHART

**CHIEF CLERK/OFFICE MANAGER**
SHERRY BAER

SOLICITOR'S OFFICE
YORK COUNTY ADMINISTRATIVE CENTER
28 East Market Street
York, Pennsylvania 17401-1588
(717) 771-9306 FAX (717) 771-9804
www.yorkcountypa.gov.

June 3, 2015

Inmate Saad Adda
York County Prison
3400 Concord Road
York, PA 17402

RE:   Solicitor's Review – Saad Adda
      Complaint Register No.: M040915C-15117
      Inmate Status – Pretrial Detainee

Dear Inmate Adda:

I wrote you a letter on May 13, 2015 indicating that I needed further information to make a determination on whether or not your right to medical care was being violated. Because of the seriousness of your complaint, I obtained the assistance of the Deputy Warden of Treatment to provide me with more information.

I have determined that the lump on your chest that you complained about was x-rayed, and based on the conclusions, is a benign tissue mass that does not appear to be a threat to your health.

In addition, your Dilantin levels have been appropriately monitored. There does not appear to be a reckless indifference to a serious medical need. This is not a matter for reference to the Complaint Review Board.

Inmate Saad Adda
York County Prison
June 3, 2015
Page 2


Appeal denied.


**Notice of appellate rights:**

You may appeal this decision by writing a letter, explaining reasons why your request or claim should be granted. The letter should be addressed to: Chairman (President), Inspectors of the York County Prison (York County Prison Board), 28 East Market Street, York, Pennsylvania 17401.

If an inmate leaves the York County Prison for any reason, the inmate must advise the Solicitor's Office, in writing, of a valid forwarding address. The failure to do so will automatically foreclose the inmate's right to obtain a Right-To-Sue Letter, and/or exhaust their Administrative remedies


Sincerely,

Donald L. Reihart,
Solicitor for the York County Prison Board

DLR/dmf

Inmate Saad Adda
Page 2

about and it happened in so many occasion that I do not get my afternoon med, the answer is it's my fault or he or she the officer's fault. I do know and believe they are short staff, so if I am working the medical department why are they not working with me. Rather they write me up most of the nurses.

March 26, 2015: I spoke with Medical about possibly getting a better mattress than the one I have. Last year both PA put an order for this mattress. I asked the medical about what's the hold up, now the answer is the county prison don't want to issue this mattress. I had 2 back surgerys, neck surgery wich i can't get my meds to relief my pain, the mattress that is provided by the county is not helping at all. Is there any possibility of having a medical issue mattress so everybody is happy about this matter. I have a chronic pain and I been patient all this time. Thank you.

The Medical Section of the Prison responded to these complaints, stating:

#1: Medication appears to be given at appropriate times. Meds may be given one hour before or one hour after they are prescribed. We do not want you to miss your meds or receive them in an untimely manner. There are extenuating circumstances within the facility that sometimes affect the med passes.

#2: A mattress based on a medical need, must be approved by a medical provider. Please submit a sick call request to see a medical provider for your mattress request.

Deputy Warden Doll reviewed these complaints and responded as follows:

Your grievance was about receiving medications on time and receiving a second mattress. HSA Bennett responded to your concern about medication dispensing times, which you accepted. You note that in your appeal. This issue is resolved.
In regards to your second mattress request, it was not approved. You were evaluated by PA Sackett on 4/13/15.

In his "806" the inmate states as follows:

Responding to the 805 from the Deputy Warden, my words get twisted. I do not understand what the Deputy Warden is referring to about medication with HSA Bennett this issue is not in my either 801 or 802. Since the Deputy Warden is speaking about medication the only issue I have it was about my seizure meds when I was told by Ms. Laura and she

Inmate Saad Adda
Page 3

was concern the level was high, then when I was seen by PA Sandy she denied my service and even did not want to change my dose. Ms. Laura again was concern, so ordered a blood work come back high, and I was seen by PA to...the dose, but did not want to take any other step to order more/request more test for the lump I have in my left chest close to my heart (push button).   I ask this solicitor to take action and have the provider to require more testing. The burden now is on medical provider.

II.

### DISCUSSION AND DETERMINATION

This inmate is dissatisfied with the manner in which medication is dispensed to him at the York County Prison. He also has requested a mattress which has been refused by the medical section.

In his 806, the inmate seems to abandon his original complaints and instead focuses on the level of the seizure medication that he is receiving. He claims that a health care provider was concerned that he was receiving too much medication and requested additional testing.   The inmate also complains, in his 806, that he has a "lump" in his chest, near his heart, that should tested.

Normally, complaints that are raised for the first time by the inmate in an 806 appeal are dismissed. However, the seriousness of this inmate's medical complaints require investigation.  We will return this matter to the Deputy Warden of Treatment for an appropriate investigation. After we receive a report from the Deputy Warden of Treatment, we will reassess the appeal.

At this time, this is not a matter for reference to the Complaint Review Board.

**Appeal provisionally denied.**

Sincerely,

Donald L. Reihart
Solicitor for the York County Prison Board

DLR/nlb

( Exhibit E )

# YORK COUNTY BOARD OF COMMISSIONERS

**COMMISSIONERS**
STEVE CHRONISTER, PRESIDENT
DOUG HOKE, VICE PRESIDENT
CHRISTOPHER B. REILLY, COMMISSIONER



**SOLICITOR**
MICHAEL W. FLANNELLY

**ASSISTANT SOLICITOR**
DONALD L. REIHART

**CHIEF CLERK/OFFICE MANAGER**
SHERRY BAER

**SOLICITOR'S OFFICE**
YORK COUNTY ADMINISTRATIVE CENTER
28 East Market Street
York, Pennsylvania 17401-1588
(717) 771-9306  FAX (717) 771-9804
www.yorkcountypa.gov.

December 21, 2015

Inmate Saad Adda
York County Prison
3400 Concord Road
York, PA  17402

RE:    Grievance Appeal – Final Review- Inmate Saad Adda
       Grievance No. M042215A-15194

Dear Inmate Adda:

Your appeal that was taken regarding the above captioned Complaint Register Number has been reviewed.

The York County Prison Board voted to deny your appeal.

You have now exhausted your administrative remedies required by the Federal Prison Litigation Reform Act, 42 U.S.C. §1997(e).

Sincerely,

Donald L. Reihart
Solicitor for the York County Prison Board

DLR/nlb
Cc:  Deputy Warden Doll

# YORK COUNTY BOARD OF COMMISSIONERS

**COMMISSIONERS**
STEVE CHRONISTER, PRESIDENT
DOUG HOKE, VICE PRESIDENT
CHRISTOPHER B. REILLY, COMMISSIONER



**SOLICITOR**
MICHAEL W. FLANNELLY

**ASSISTANT SOLICITOR**
DONALD L. REIHART

**CHIEF CLERK/OFFICE MANAGER**
SHERRY BAER

**SOLICITOR'S OFFICE**
YORK COUNTY ADMINISTRATIVE CENTER
28 East Market Street
York, Pennsylvania 17401-1588
(717) 771-9306 FAX (717) 771-9804
www.yorkcountypa.gov.

October 28, 2015

Inmate Saad Adda #89405
York County Prison
3400 Concord Road
York, PA 17402

> RE:    **Solicitor's Review – Saad Adda #89405**
> **Complaint Register No. M042215A-15194**
> **Inmate Status:**

Dear Inmate Adda:

The following constitutes a response to the appeal that you filed from the determination made by the Deputy Warden on September 30, 2015.

**I.**

## PROCEDURAL AND FACTUAL BACKGROUND

An appeal has been filed under the Complaint Review System established at the York County Prison by Inmate Saad Adda. The date of the appeal is September 30, 2015.

The original 801 filed by the inmate states as follows:

I am very frustrated with Medical Dept. I file a sick call on the 3/20/15 because I said something to the evening nurse about if I am not mistaken a week ago, nurse put me to see the PA. on the 3rd of April. I asked another nurse about my sick call an she check looked up in her computer. Nothing was schedule for me and as she ck again nurse did find that it was a sick call for pain and dry skin. What was so funny for her that I asked for soap. I become a joke to few of this staff, you do know if I

Inmate Saad Adda #99405
Page 2

mention dry skin that I mean soap not soup. The PA they have saw me last time. She talks more then trying to provide the service. Something is wrong about my collar bone. I do have a more like a egg pop out of my chest. Staff contacted: Same staff members I have been dealing with in the last month.

**The Medical Section of the Prison responded to this Complaint as follows:**

Patient was seen by a provider on 4/13/15. X-ray of right shoulder was normal.

Meds prescribed — Dilantin, Gabapentin, Methocarbanol and Colace. Chronic Care Clinic completed at that time.

Patient should follow up as directed. If pain and symptoms have not improved, further testing may be needed.

**Deputy Warden Doll reviewed the complaint and stated:**

A review of our grievances found an error in filing. Subsequently, I am now responding to this appeal. In your original grievance you wrote about your Dilantin level not being appropriate and your concern about no further testing for your left shoulder. Labs were ordered and collected on 4/7/15. The level was high and as a result the provider decreased the dose to 100 mg daily. Follow up was ordered in 6 weeks. However, in that time you went on a hunger strike, which affects (negatively) your Dilantin levels. A repeat of labs and review was ordered. Your most recent level taken on 9/4/15 was 10.6, which is in normal limits. In regards to your shoulder, an x-ray was taken on 5/18/15, which showed no acute trauma, no joint pathology and no fracture. Further exams were ordered and calcification was found. You were prescribed Predizone and Gabapentin. Your health concerns are being addressed.

**In his "806", the inmate states, in part, as follows:**

Under the supervising H.S.A. Bennett whom she is employed by PrimeCare is liable and personally responsible for a deprivation of my Constitutional rights. Nurse cannot be officially and personally liable under a theory of respondent superior. However, an official can satisfies the personal responsibility requirement if the conduct cousins the constitutional deprivation occurs at his/her direction or with his/her knowledge and consent. False light is a distinct invasion of privacy claim where prisoner fails to allege the health workers had knowledge of or acted in reckless disregard as to the falsify of the pasliseized matter. Civil conspiracy occurs when two or more persons combine or agree in tending to commit an unlawful act or do an otherwise lawful act by unlawful

means. Responding to Mr. Clair Doll that H.S.A. Bennett and after almost 5 months she inferentially established the following element, her conspired to the delay of my treatment. On June 5, 2015, Ms. Bennett answered the Board that all issues concerning my health is appropriately monitored. Mr. Clair Doll now is blaming my Dilantin level on a hunger strike. The only time here is interference on meds if I was diabetic. Clearly it does show here that both my Amendment was violated. Both Prime Care Health employees and prison staff (Deputy Warden) and York County Prison are responsible for the pain, suffering and emotional stress that occurred to me from the period of 6/7/15 till 9/4/15. Furthermore, both PA's Maggan and Sandy are tt responsible. In regard to the lump, Dr. Cattell is a responsible doctor who cares for prisoners of York County Prison. I was seen by him before August 7th and prior to that. I was schedule and seen by orthopedic. Dr. Cattell leveled my meds as he heard about my chief complaint seizure attacks, etc. It took PrimeCare PAs 5 months to level my meds. When practices within a prison system result in the deprivation of basic elements of adequate medical treatment then such practices violates constitutional guarantees and federal courts must act to provide relief. This is especially true when deprivation immediately threatens life. In this regard I ask punitive damage of $100/day from 4/7/15 to 9/4/15.

## II.

## DISCUSSION AND DETERMINATION

In his 801, this inmate complains about the medical section, and its lack of response to his medical needs. He claims that his collar bone has something wrong with it. He also complains that he was not given soap when requested.

The staff investigating the inmate's complaint found that the medical section did provide care, even though it was not satisfactory to the inmate. The investigative staff found the case to be complicated by a hunger strike, which apparently altered the inmate's Dilantin blood levels.

The inmate has filed an 806 which provides a very poor chronology of matters not included in his original 801. He concludes his 806 with a demand for $100 a day for the time between April 7, 2015 and September 4, 2015. He claims punitive damages for the delay in providing him treatment.

The 806 makes it clear that apparently by September 4, 2015 the inmate's medical needs were addressed. During the period prior to September 4, 2015, the inmate has failed to provide us with evidence that establishes a reckless indifference to a serious medical need that has resulted in harm to the inmate.

**Saad  Adda**
**3400 Concord rd.**
**York Pa 17402**

York County Prison.

Mr The President: I am responding and appealing the decision of the York County Board.

First lets go back to both letters that was send to me and was responded from this board from May 13th and June 3rd that clearly state that all my chief complained was resolve and furthermore my seizure medication and my delinten level was under control and more the lump in my left below in my chest below my shin, and this case was remainded to the Deputy Warden and the H.S.A Bennett.

My medical condition is serious failure to treat me did result in further significant injury or the unnecessary and wanton infliction pain. The following are indication that I have a serious medical needs. The existence injury that  a reasonable doctor would find it important and worthy of comment and treatment, the presence of a medical condition that significantly affects my daily activities; or the existence of chronic and substantial pain Prime Care employees neglected treating my condition was an isolated occurrence or an isolated exception to this Health Department, overall treatment finding deliberate indifference. Deliberate indifference can be evidence by repeated of negligent acts which disclose a pattern of conduct by the Prison medical staff.

When medical staff fails to provide medical care or a physician's negligence in diagnosing or treating a medical conditions states a valid claim of medical mistreatment under U.S.Const.amend.VIII.

This prison officials from the Deputy Warden to medical Staff that include H.S.A Bennett and both PA'S Sandy and Maggie Sackett. deliberately ignored my medical needs cannot claim it that was not apparent to a reasonable person that violate the law.

In contrast delay or even denial of medical treatment involve life-threatning conditions or situation where it is apparent that delay would detrimentally or situation exacerbate the medical problem. Therefore in any situation a medical attention claim delaying access to medical can violate U.S.Const.amend VIII.

The medical facility in this prison system is grossly understaffed in addition with the exception of few trained nurses who they are very well adequate to their job. Compounding the lack of staff and facility and resulting in part there form is the poor administration of the medical treatment including the procurement and distribution of drugs and other medical needs. Furthermore the records is filed with examples of the staff members intentionally denying or did delaying me the right to be examined by a doctor. This did result to a degree of neglect and that is "barbarous" and more is "shocking to the conscience".

The proof and burdens that first the medical staff H.S.A Bennett and both PA'S failed to treat my condition that result further significant injury or unnecessary and wanton infliction of pain. Second medical staff H.S.A. Bennett and both PA'S fail to respond to my medical needs. This does appear that medical officials intentionally either denying or delaying the treatment.

# YORK COUNTY BOARD OF COMMISSIONERS

**COMMISSIONERS**
STEVE CHRONISTER, PRESIDENT
DOUG HOKE, VICE PRESIDENT
CHRISTOPHER B. REILLY, COMMISSIONER



**SOLICITOR**
MICHAEL W. FLANNELLY

**ASSISTANT SOLICITOR**
DONALD L. REIHART

**CHIEF CLERK/OFFICE MANAGER**
SHERRY BAER

**SOLICITOR'S OFFICE**
YORK COUNTY ADMINISTRATIVE CENTER
28 East Market Street
York, Pennsylvania 17401-1588
(717) 771-9306 FAX (717) 771-9804
www.yorkcountypa.gov.

May 14, 2015

Inmate Saad Adda
York County Prison
3400 Concord Road
York, PA 17402

      RE:    **Grievance Appeal – Final Review- Inmate Saad Adda**
              **Grievance No. M021315J-1597**

Dear Inmate Adda:

    Your appeal that was taken regarding the above captioned Complaint Register Number has been reviewed.

    The York County Prison Board voted to deny your appeal.

    You have now exhausted your administrative remedies required by the Federal Prison Litigation Reform Act, 42 U.S.C. §1997(e).

                  Sincerely,

                  Donald L. Reihart
                  Solicitor for the York County Prison Board

DLR/nlb
Cc: Deputy Warden Doll

# YORK COUNTY BOARD OF COMMISSIONERS

**COMMISSIONERS**
STEVE CHRONISTER, PRESIDENT
DOUG HOKE, VICE PRESIDENT
CHRISTOPHER B. REILLY, COMMISSIONER



**SOLICITOR**
MICHAEL W. FLANNELLY

**ASSISTANT SOLICITOR**
DONALD L. REIHART

**CHIEF CLERK/OFFICE MANAGER**
SHERRY BAER

**SOLICITOR'S OFFICE**
YORK COUNTY ADMINISTRATIVE CENTER
28 East Market Street
York, Pennsylvania 17401-1588
(717) 771-9305 FAX (717) 771-9804
www.yorkcountypa.gov.

April 24, 2015

Inmate Saad Adda
York County Prison
3400 Concord Road
York, PA 17402

RE:    **Solicitor's Review – Inmate Saad Adda**
**Complaint Register No. M021315J-1597**
**Inmate Status – Pre-Trial Detainee**

Dear Inmate Adda:

The following constitutes a response to the appeal that you filed from the determination made by the Deputy Warden on April 2, 2015.

I.

## PROCEDURAL AND FACTUAL BACKGROUND

An appeal has been filed under the Complaint Review System established at the York County Prison by inmate Saad Adda. The date of the appeal is April 2, 2015.

The original 801 filed by the inmate states as follows:

Victoria Shee is LPN. This nurse wrote me up on 1/7/15 saying that I don't come to the door for my life sustaining medication. Last 2 weeks I been taking all my meds at Cross Hall Med. I was trying to explain the nurse that but she ignored me and went ballistic saying the reason of it that I don't come to the door and every time I have to be called by her and security. 1st since my presence in NNB that was the 1st time this nurse had to give meds. 2nd if she didn't have to argue with me all she had to ck her computer. Never less this get a serious problems because when I was called to medical on the 1/9/15. I told them what happened

Inmate Saad Adda
Page 2

they like we know wish nurse you talking about. All she had to do is ck her computer when I was trying to talk to her. She layed about her report. Medical do not have one reason why I have been called every day for my meds. I do not have any write up for that. But it's ok for my own safety if when they ck my blood level for my seizures I will be good. What I am trying to say that most staff in this prison they be given a little of the Power they abuse it. Talked to: Nurses at Cross Hall Med.

The Medical Section of the Prison reviewed this complaint and stated:

I have spoken with the nurse mentioned in your 801 grievance. She explained that you were not present for the med pass. It is important that you are ready with water to receive med pass. You should not have to be called by the nurse or security.

Patient now takes meds in Medical based on 12/22/14 hoarding issue.

Deputy Warden Doll reviewed this complaint and stated as follows:

Inmates and detainees are to report to the medication cart with a cup of water ready to receive and consume their prescribe narcotics. Nursing staff identified you as trying to hoard medications on 12/22/14. In addition you failed to report for medications when the medication cart was at your housing unit. Based on your failure to report for medications at times and attempting to hoard medications, your medication distribution is now in the Medical Department where staff can watch you closely to make sure you take/receive the medication as prescribed. Your behavior requires closer supervision. Your appeal is denied.

In his "806" the inmate states as follows:

Sir or mam: I my main difficulty to put a sentence together but I do know and try to get a definition of a word. On the 12/22/15 they had me put in the hoarding list that I did have a write up or other disciplinary issue. Now hoarding means that I am keeping my medication and according to prison and medical policy you will be called to medical to take your meds and specially in life threatening meds. Victoria Sheets LPN took a law in her own hand and violated me and the complaint supervisor and Deputy Warden in protecting her prison staff member and I am in offense. I am a criminal but one thing about me I do not lie. Let's go back and hope and pray this solicitor's office will put the two sense together. On the 1/9/15 I file a complaint/Victoria Sheets. I explained the compl I suffer for about the incident, the response I get they spoke to each other maybe over a coffee break and the worst part of it that I am a hoarder. My meds should

Inmate Saad Adda
Page 3

be taken in medical. This incident happened on the 1/9/15 and medical making me take my meds at medical since 12/22/14. Anybody please how simple I can get this broke down so you can understand it. Doll basically he did answer me in the same way the Complaint Supervisor did....

## DISCUSSION AND DETERMINATION

This inmate complains that he was not given his medication at his cell door. The staff investigating this inmate's complaint determined that he had been found to hoard his medicine. He, therefore, is required to receive his medication in the medical section.

The inmate's complaint that he was not given medication at his cell door is not well founded. His medication is not to be delivered at the cell door, but rather is to be delivered to him in the medical section to frustrate his efforts to hoard medication.

This is not a matter for reference to the Complaint Review Board.

Appeal denied.

Notice of appellate rights:

You may appeal this decision by writing a letter, explaining reasons why your request or claim should be granted. The letter should be addressed to: Chairman (President), Inspectors of the York County Prison (York County Prison Board), 28 East Market Street, York, Pennsylvania 17401

If an inmate leaves the York County Prison for any reason, the inmate must advise the Solicitor's Office, in writing, of a valid forwarding address. The failure to do so will automatically foreclose the inmate's right to obtain a Right-To-Sue Letter, and/or exhaust their Administrative remedies.

Sincerely,

Donald L. Reihart
Solicitor for the York County Prison Board

DLR/nlb

MO42215A .15199

**Saad   Adda**
**3400 Concord rd.**
**York Pa 17402**

York County Prison.


Mr The President: I am responding and appealing the decision of the York County Board.

First lets go back to both letters that was send to me and was responded from this board from May 13th and June 3rd that clearly state that all my chief complained was resolve and furthermore my seizure medication and my Dilanten level was under control and more the lump in my left below in my chest below my shin, and this case was remainded to the Deputy Warden and the H.S.A Bennett.

My medical condition is serious failure to treat me did result in further significant injury or the unnecessary and wanton infliction pain. The following are indication that I have a serious medical needs. The existence injury that  a reasonable doctor would find it important and worthy of comment and treatment, the presence of a medical condition that significantly affects my daily activities; or the existence of chronic and substantial pain Prime Care employees neglected treating my condition was an isolated occurrence or an isolated exception to this Health Department, overall treatment finding deliberate indifference. Deliberate indifference can be evidence by repeated of negligent acts which disclose a pattern of conduct by the Prison medical staff.

When medical staff fails to provide medical care or a physician's negligence in diagnosing or treating a medical conditions states a valid claim of medical mistreatment under U.S.Const.amend.VIII.

This prison officials from the Deputy Warden to medical Staff that include H.S.A Bennett and both PA'S Sandy and Maggie Sackett. deliberately ignored my medical needs cannot claim it that was not apparent to a reasonable person that violate the law.

In contrast delay or even denial of medical treatment involve life-threatning conditions or situation where it is apparent that delay would detrimentally or situation exacerbate the medical problem. Therefore in any situation a medical attention claim delaying access to medical can violate U.S.Const.amend VIII.

The medical facility in this prison system is grossly understaffed in addition with the exception of few trained nurses who they are very well adequate to their job. Compounding the lack of staff and facility and resulting in part there form is the poor administration of the medical treatment including the procurement and distribution of drugs and other medical needs. Furthermore the records is filed with examples of the staff members intentionally denying or did delaying me the right to be examined by a doctor. This did result to a degree of neglect and that is "barbarous" and more is "shocking to the conscience".

The proof and burdens that first the medical staff H.S.A Bennett and both PA'S failed to treat my condition that result further significant injury or unnecessary and wanton infliction of pain. Second medical staff H.S.A. Bennett and both PA'S fail to respond to my medical needs. This does appear that medical officials intentionally either denying or delaying the treatment.

Deputy Warden and medical staff neglected to provide me with adequate response to my medical needs as I did requested in a timely matter rather the recklessness or a conscious disregard of my complaint had harmed and delayed to provide the medical I need it.

The Deputy Warden took him almost five (05) months to respond to my 804 complaint furthermore he blames me that I caused interference with the level of my Dilantin was low, I even asked the provider if my level will have any thing to do with me not eating the answer (laughing) provider realty think it was a joke and furthermore what gives the right to the Deputy Warden Clair Doll to conclude that a hunger strike did affect my Dilantin level the only time there is interference with medication if I was a diabetic.

Once more my medical needs addressed seven(7) months latter and this board called this violation did not constitute my rights. What more will I have to prove that medical staff violated my Eighth Amendment and Fourth Amendment when clearly the physician and nurse intentionally inflicting pain. When denying reasonable request for medical treatment or be exposed to undue suffering or the threat of tangible residual injury, or by just intentionally refusal to provide the care.

Mr the President (Chairman) of this Board I do ask that Prime Care and it's staff should be held liable for the damage and I ask for punitive damage of the sum of 100$a /day from 04/07/2015 to 09/04/2015.

Respectfully Submited.

**Saad   Adda**
**3400 Concord rd.**
**York Pa 17402**


### YORK COUNTY BOARD OF COMMISSIONER


Mr The Charmain (President)Inspector of the YORK COUNTY PRISON

1) Petitioner is inmate in York County Prison.
2) Petitioner is held on in related charges on this complain.
3) Petitioner fel Greivance on 1/7/2015 on a staff member Nurse LP.N Victoria Sheet, this Nurse wrote me up and pull trigger for officer Harsha to search my cell and wrote me up.

   Mr The President based on 12/22/2014 a Nurse identified me that I was trying to hoard my medication ,I was not given a writte up for this, since I was guilty for whatever reasons I am not disputing any of that.

   Mr The President `,now I am going to talk about the incident that occurred on 1/7/2015 at this day Nurse took the law in her hand Victoria Sheet who wrote me up for not coming to the door for life Sustaining medication, I told the Nurse that I do not take meds in /or in the block cause I am in the Hoarding list, since 12/22/2014.
   But the Nurse says different thet I am called to medical cause I do not come to the door.

   Mr The President let's put this two incidents on one on 12/22/2014 and this by Deputy Warden that my meds no longer be taking in the block ,on 1/7/2015 Nurse Victoria Sheet did writte me up for not coming to the door now, if there is order by The Deputy Warden of this Prison that my meds should be taken in medical so why? Victoria Sheet is taking laws in her hands and abused her profission never less when I spoke with the medical staff I was told that she was wrong and this is order by the Deputy Warden.

   Mr The President Nurse Victoria Sheet has serious problems and she need to be held accountable for her actions.

Mr The President I strongly disagree with the complaint supervisor about the answer I get from he/she more is the two they discussed my complaint and is more like yeah whatever.............................................

Mr The President ,with all Respect to the grievance supervisor when in one hand will say my meds should be taken on medical since 12/22/2014 and then will say something different on 1/7/2015 someone please help here .

Mr The President I am very sorry it is very frostrating jest get out of B.A.U on the 12/28/2014 and not even 10 days latter I get another write up .i do not deserve that every time I try to get close for improving my self I get write up for stupidity.

Mr The President I ask that Nurse Victoria Sheet be suspended for a period of a week with no pay I think since I get week long pod restriction its fair .

Mr The President I have a lot of respect for the Nursing staff who trays so hard providing the best health sometimes are better then a PA and others they here to abuse whats is giving to them.

Mr The President other Inmates found coming to medical is become so easy for them to hoard and take the meds back to there pods, but Inmates like my self who are respectful and kind to  stuff members that I gat to finish last.

Mr The President I am not her to criticized any body I am only asking this board to looking to this matter.

Mr The President: I thank you very much for giving me a chance to respond on the complaint review and looking forward for the board to take actions.

Sincerely Yours.

**Saad  Adda**
**3400 Concord rd.**
**York Pa 17402**

York County Prison.

Mr The President: I am responding and appealing the decision of the York County Board.

First lets go back to both letters that was send to me and was responded from this board from May 13th and June 3rd that clearly state that all my chief complained was resolve and furthermore my seizure medication and my delinten level was under control and more the lump in my left below in my chest below my shin, and this case was remainded to the Deputy Warden and the H.S.A Bennett.

My medical condition is serious failure to treat me did result in further significant injury or the unnecessary and wanton infliction pain. The following are indication that I have a serious medical needs. The existence injury that  a reasonable doctor would find it important and worthy of comment and treatment, the presence of a medical condition that significantly affects my daily activities; or the existence of chronic and substantial pain Prime Care employees neglected treating my condition was an isolated occurrence or an isolated exception to this Health Department, overall treatment finding deliberate indifference. Deliberate indifference can be evidence by repeated of negligent acts which disclose a pattern of conduct by the Prison medical staff.

When medical staff fails to provide medical care or a physician's negligence in diagnosing or treating a medical conditions states a valid claim of medical mistreatment under U.S.Const.amend.<u>VIII.</u>

This prison officials from the Deputy Warden to medical Staff that include H.S.A Bennett and both PA'S Sandy and Maggie Sackett. deliberately ignored my medical needs cannot claim it that was not apparent to a reasonable person that violate the law.

In contrast delay or even denial of medical treatment involve life-threatning conditions or situation where it is apparent that delay would detrimentally or situation exacerbate the medical problem. Therefore in any situation a medical attention claim delaying access to medical can violate U.S.Const.amend <u>VIII.</u>

The medical facility in this prison system is grossly understaffed in addition with the exception of few trained nurses who they are very well adequate to their job. Compounding the lack of staff and facility and resulting in part there form is the poor administration of the medical treatment including the procurement and distribution of drugs and other medical needs. Furthermore the records is filed with examples of the staff members intentionally denying or did delaying me the right to be examined by a doctor. This did result to a degree of neglect and that is "barbarous" and more is "shocking to the conscience".

The proof and burdens that first the medical staff H.S.A Bennett and both PA'S failed to treat my condition that result further significant injury or unnecessary and wanton infliction of pain. Second medical staff H.S.A. Bennett and both PA'S fail to respond to my medical needs. This does appear that medical officials intentionally either denying or delaying the treatment.



INMATE MAIL
PA DEPT OF
CORRECTIONS

US POSTAGE
ZIP 16823
02 1W
0001403031MAR
$ 00

P.O. Box
BE
No Fi

STATES DISTRICT COU
for the
DISTRICT OF PENNSYL
Nealon Federal Bldg 8
North Washington Ave
Po Box 1148
on PA 18501-114

MAIL

**PRIORITY MAIL®**
UNITED STATES POSTAL SERVICE
Visit us at usps.com

Label 107R, January 2008